UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNY GOODMAN AND MONICA
BALLEW-GOODMAN,                                  Case No. 15-12456

    Plaintiffs,                                      Honorable Nancy G. Edmunds

v.

CITIMORTGAGE, INC., AND FEDERAL
NATIONAL MORTGAGE ASSOCIATION,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT [5]**

This wrongful foreclosure action arises out of the December 10, 2014 sheriff's sale of residential property located at 6319 North Linden, Mount Morris, Michigan, 48458 (the "Property") to CitiMortgage, Inc ("CMI"). The crux of Plaintiffs' complaint revolves around CMI's alleged unwillingness to modify the terms of the mortgage securing the Property. In their seven-count complaint, Plaintiffs allege that CMI (1) failed to follow the requirements set forth under Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3201 *et seq*, (2), breached the implied covenant of good faith and fair dealing, (3) made fraudulent misrepresentations with respect to the availability of a loan modification, and (4) slandered the title to the Property.

    Currently before the Court is CMI's motion to dismiss Plaintiffs' complaint. (Dkt. # 5). For the reasons stated below, the Court GRANTS CMI's motion.

**I.     FACTS**

On or about September 30, 2002, Plaintiffs entered into a mortgage loan transaction with non-party ABN AMRO Mortgage Group, Inc ("ABN AMRO"). As security for the loan, Plaintiffs executed a promissory note in the amount of $116,500. (Defs' Mot. Ex. A, Note). The note was secured by a mortgage on the Property in favor of ABN AMRO and its successors and assigns. ABN AMRO's interest in the Property was later assigned to CMI. (Compl. ¶ 13). Plaintiffs do not contest the validity of the assignment or CMI's interest in the Property. On October 17, 2009, Plaintiffs executed a Balloon Loan Modification ("Modification") agreement with CMI. (Plfs' Resp. Ex. 1-4, Balloon Modification). The Modification provided that the original mortgage, note, and security instrument would "remain unchanged and in full effect . . . ." (*Id.*)

At some point in mid 2013, Plaintiffs "came upon hard economic times and . . . were temporarily unable to meet the payment obligations under the Note and Mortgage and began worrying that [CMI] would . . . pursue default remedies." (Compl. ¶ 18). On September 5, 2013, CMI sent Plaintiffs a "Borrower Response Package" outlining a number of foreclosure prevention options. (Defs' Mot. Ex. E, Letter). Around this same time, Plaintiffs retained attorney Steven Ruza and Home Legal Group, Inc. ("HLC") to assist them with the loan modification process. Unfortunately for Plaintiffs, Ruza, who later pled guilty to one count of conducting a criminal enterprise in connection with HLC's foreclosure "avoidance" scheme, provided no help at all. In the end, despite a series of letters from CMI, Plaintiffs failed to submit the documents required for a hardship assistance review.

On November 14, 2014, CMI sent Plaintiffs a foreclosure notice identifying a sale date of December 10, 2014. That same day, Plaintiffs contacted CMI to request hardship

2

assistance. In response, CMI advised Plaintiffs that their application was "missing some required documents" and that the foreclosure would proceed as scheduled unless they submitted the missing materials "at least seven business days before [December 10, 2014] . . . . " (Defs' Mot. Ex. I, Letter).

On December 1, 2014–seven business days before the scheduled foreclosure sale–Plaintiffs' hardship application was still missing the documentation previously requested, and CMI opted to move forward with the sheriff's sale. Between November 12 and December 3, 2014, CMI published notice of the sale in the Genesee County Legal News. (Plfs' Mot. Ex. 1-5, Aff. Of Publication). On December 10, 2014, the Property was sold at a foreclosure sale to CMI for $111,095. (*Id.* Evidence of Sale). The statutory redemption period expired on June 10, 2015, at which point legal title vested in CMI.

One day prior to the expiration of the redemption period, Plaintiffs filed a complaint in Genesee County Circuit Court. On July 10, 2015, CMI removed the case to this Court on the basis of diversity jurisdiction. In their complaint, Plaintiffs lodge seven claims related to CMI's handling of their request for a loan modification: wrongful foreclosure, breach of contract, fraudulent misrepresentation, slander of title, "foreclosure barred by unclean hands", preliminary injunction, and equitable mortgage. The Court considers each in turn.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Sixth Circuit recently noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Assoc.,* 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, "[w]hile the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must always keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555.

Moreover, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim.*" Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (internal quotation marks and citations omitted).

**III.   ANALYSIS**

CMI argues that each of Plaintiffs' seven claims have been emphatically rejected by the Sixth Circuit or controlling Michigan precedent. The crux of CMI's legal position is relatively simple: Plaintiffs failed to redeem the Property before the expiration of the redemption period and have not and cannot make a showing of fraud or irregularity sufficient to set aside the foreclosure sale. Furthermore, with respect to Plaintiffs' fraudulent misrepresentation claim, CMI maintains that even if it was properly pled, it is barred by the statute of frauds. The Court agrees.

### A.  Plaintiffs Failed to Exercise Their Redemption Rights

Under Michigan law, mortgagors have six months to redeem their property following a sheriff's sale. Mich. Comp. Laws § 600.3240. It is well established that "once the redemption period following foreclosure of a property has expired, . . . the former owner's rights in and title to the property are extinguished.  At that point, the former owner loses [the ability] to assert claims with respect to the property." *Luster v. Mortg. Elec. Registration Sys., Inc.*, No. 11-CV-14166, 2012 WL 124967, at *2 (E.D. Mich. Jan. 17, 2012) (Rosen, C.J.) (citing cases). Further, filing a lawsuit within the redemption period, as Plaintiffs did here, is "insufficient to toll the redemption period." *Overton v. Mortgage Electronic Registration Systems,* No. 07–725429, 2009 WL 1507342, *1 (Mich. Ct.  App. May 28, 2009).  Once the statutory redemption period expires, "[t]he law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement . . . in the absence of a clear showing of fraud, or irregularity." *Luster,* 2012 WL 124967 at *2; (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). The fraud or irregularity must relate to the foreclosure proceeding itself. *Whitfield v. OCWEN Berkeley Fed. Bank & Trust*, No.

5

221248, 2001 WL 1699782, *2 (Mich. Ct. App. Dec. 28, 2001).

Here, all of Plaintiffs' rights in the Property were extinguished when the redemption period expired on June 10, 2015 and they fail to establish how, if at all, CMI's actions support a strong showing of fraud or irregularity. Indeed, each of the three theories of liability offered in support of Plaintiffs' wrongful foreclosure claim fall short of the mark in this regard. First, Plaintiffs contend that CMI "published and posted a notice of sale without first providing the Notice of Default." (Compl. ¶ 64). Even assuming, as the Court must, that this was true, a defect in notice "is only actionable upon a showing of actual prejudice" to the mortgagor. *Fawcett v. Wells*, No. 13-cv-10591, 2013 WL 6181719, at *3 (E.D. Mich. Nov. 26, 2013) (citing *Lessl v. CitiMortgage, Inc.*, 515 Fed. App'x 467, 469 (6th Cir. 2013). "[N]o prejudice from inadequate notice can be found . . . when the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property." *Id.* (citing *Lessl*, 515 App'x at 469.). Plaintiffs fail to suggest how, if at all, they would have been in a better position had CMI complied with the notice requirements under Mich. Comp. Laws § 600.3204.

Nor does Plaintiffs' contention that CMI violated the Real Estate Settlement and Procedures Act ("RESPA") by "pursuing loss mitigation options contemporaneously with active foreclosure proceedings[]" fare any better. (Compl. ¶ 72). As a preliminary matter, the Sixth Circuit has been clear that negotiations for loan modifications are "separate from the foreclosure process itself . . . [a]s such, even if assumed to be true, [Plaintiffs'] allegations of fraud [stemming from the loan modification process] would not qualify him for the fraud exception because they are not fraud or irregularity in 'the legal measures' of

6

the foreclosure process.'" *Williams v. Pledged Property II, LLC,* 508 F. App'x 465, 468 (6th Cir. 2012); *see also Shamoun v. Fed. Nat. Mortgage Ass'n*, No. 12-15608, 2013 WL 2237906, at *4 (E.D. Mich. May 21, 2013) (same). Moreover, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option" in the first place. 12 C.F.R. § 1024.41. Furthermore, Plaintiffs have "not demonstrated or even alleged that [they] would have been eligible for a loan modification if [they] had been evaluated . . . ." *Bertschy Gallimore v. U.S. Bank Nat. Ass'n*, No.15-352, 2015 WL 3889260, at *5 (W.D. Mich. June 24, 2015) (finding that bank had no duty to evaluate Plaintiff for loan modification). In other words, Plaintiffs' fail to allege–let alone establish–that they were prejudiced in anyway by CMI's conduct.

Finally, Plaintiffs' baldly assert that CMI failed to "properly calculate the amount claimed to be due on the date of the notice of foreclosure." (Compl. ¶ 84). Even assuming, *arguendo,* that this was a cognizable claim, Plaintiffs fail to assert even the most basic facts suggesting a right to relief; namely, (1) the outstanding balance reported on the notice of foreclosure, and (2) the balance according to their records. Moreover, there is no indication how this purported discrepancy has impaired Plaintiffs' ability to challenge the underlying foreclosure. As such, this claim suffers from the same pleading malady previously identified; namely, a failure to plausibly assert prejudice stemming from CMI's actions. Accordingly, the Court must, and does, dismiss Counts I, V, and VI, each of which directly relate to CMI's foreclosure of the Property.

### B. Count II- Breach of Contract

In Count II of the complaint, Plaintiffs contend that Defendants breached the implied covenant of good faith and fair dealing imposed in every contract by (1) "disingenuously

7

negotiating loss mitigation assistance", and (2) "misleading Plaintiffs about approval and extension of loss mitigation assistance as an alternative to foreclosure." (Compl. ¶ 98-99). There is no dispute that Plaintiffs' mortgage does not require CMI to engage in any level of "loss mitigation assistance." Similarly, there is no question that Plaintiffs breached the agreement by failing to make the required loan payments. " '[O]ne who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform.' " *Collins v. Wickersham*, 862 F. Supp. 2d 649, 657 (E.D. Mich. 2012) (quoting *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App.1994).

To the extent that Plaintiffs are seeking to enforce an oral promise of a CMI employee, the statute of frauds bars their claim. Under Michigan's statute of frauds, "a financial institution's promise regarding financial accommodation, like a loan modification, is not enforceable unless it is (1) in writing, and (2) signed by an authorized agent of the financial institution." *Heikkinen v. Bank of Am., N.A.,* 11-12532, 2012 WL 628608, at * 6-7 (E.D. Mich. Feb. 27, 2012) (citing Mich. Comp. Laws. § 566.132(2)(c)(3)). This statute "plainly states that a party is precluded from bringing a claim–no matter its label–against a financial institution to enforce the terms of an oral promise." *Crown Tech Park v. D & N Bank, FSB,* 619 N.W.2d 66,72 (Mich. Ct. App. 2000). Because Plaintiffs present no evidence of a writing signed by CMI promising to modify the terms of their agreement, any claims based on this alleged promise must be and are dismissed.

Finally, no independent cause of action for breach of an implied covenant of good faith and fair dealing is recognized under Michigan law. *Belle Isle Grill Corp. v. City of Detroit,* 666 N.W.2d 271, 279 (Mich. Ct. App. 2003). Therefore, Count II must be and is dismissed.

**C. Count III- Fraudulent Misrepresentation**

In Count III of the complaint, Plaintiffs allege that CMI made false statements of fact "intended to induce Plaintiffs to refrain from defending the foreclosure of their home in reliance on the representations . . . ." (Compl. ¶ 104). CMI argues that Plaintiffs' fraud claim was not plead with sufficient particularity under Rule 9 of the Federal Rules of Civil Procedure. The Court agrees.

When asserting a claim sounding in fraud, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009) (internal quotations and citation omitted). At a minimum, this requires the complaining party to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (internal quotations and citations omitted).

Plaintiffs' fraud claim, consisting of a mere five conclusory allegations, falls miserably short of the rigorous pleading standard mandated under Rule 9. Indeed, Plaintiffs fail to identify the content of the allegedly fraudulent statements made by CMI with any level of specificity, maintaining only that "the representations made by [CMI] . . . regarding the foreclosure proceedings were false statements of facts." (Compl. ¶ 102). This, in addition to Plaintiffs failure to plausibly allege any of the other circumstances surrounding the fraudulent misrepresentation, leads only to one logical conclusion; namely, that Plaintiffs have not satisfied their burden at the pleading stage.

### D. Count IV (Slander of Title) and Count VII (Equitable Mortgage)

Plaintiffs final two claims are so woefully inadequate they hardly merit discussing. In Count IV, Plaintiffs allege that CMI slandered their title to the Property by carrying out the foreclosure. "Slander of title claims in Michigan 'have both a common-law and statutory basis.' A plaintiff must prove the same three elements for both a common-law slander of title claim and a claim under Michigan Complied laws § 565.109: 'falsity, malice, and special damages.' " *Keyes v. Deutsche Bank Nat. Trust Co.*, 921 F. Supp. 2d 749, 762 (E.D. Mich. 2013) (quotations and citations omitted). Here, Plaintiffs have failed to establish the underlying predicate to their claim; namely, that the foreclosure was invalid. Moreover, to demonstrate malice, "the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 463 N.W.2d 479, 486 (Mich. Ct. App. 1990). Plaintiffs seemingly gloss over this requirement in the complaint leaving the Court to guess whether CMI acted with the requisite intent.

Finally, Plaintiffs request the Court to "exercise its equitable powers to impose an equitable mortgage . . . ." (Compl. ¶ 134). "A court of equity may impose . . . an equitable mortgage on a parcel of real property when no valid mortgage exists . . . ." *Eastbrook Homes, Inc. v. Treasury Dep't*, 820 N.W.2d 242, 251 (Mich. Ct. App. 2012). Here, there is no basis for the Court to impose an equitable mortgage because the Parties' relationship is governed by a written agreement. Accordingly, Counts IV and VI are dismissed.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS CMI's motion to dismiss the complaint. (Dkt. # 5). This order closes the case in its entirety.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 22, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 22, 2015, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager